UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANNE E. SCHMOOCK,

    Plaintiff,

v.                                                                                 Case No. 22-CV-775-SCD

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*,

    Defendant.

## DECISION AND ORDER

    Plaintiff Anne Schmoock applied for social security disability insurance benefits and supplemental security income due to a combination of physical and mental health impairments. Her claim was denied, and the denial was affirmed following a hearing before an Administrative Law Judge (ALJ) employed by the Social Security Administration (SSA).

    Schmoock now seeks judicial review of the ALJ's decision because she believes that the ALJ erred by failing to fully consider all of Schmoock's anxiety symptoms and wrongfully discounting the opinion of her mental healthcare provider. *See* ECF No. 13. Kilolo Kijakazi, the Acting Commissioner of the SSA, maintains that the ALJ did not commit reversible error. I agree with Kijakazi and affirm the SSA's determination that Schmoock is not disabled.

## BACKGROUND

    Schmoock has alleged disability since July 2018 due to a number of conditions including anxiety, depression, cirrhosis of the liver, left ankle deformation, broken right knee, obesity, chest pain, migraines, and sleeplessness. R. 67. Her claim was denied initially and on

reconsideration.[1] R. 20. Schmoock then had a hearing before ALJ Kafkas, who denied her claim for benefits. R. 20-36.

## I. Schmoock's Background and Hearing Testimony

Schmoock was born in 1973 and has a high school education. R. 34. At the time of her hearing before the ALJ, she lived in Manitowoc, Wisconsin. R. 51. At the hearing, Schmoock testified that she had severe anxiety and depression, sleeping difficulties, and mood swings. R. 54. She also testified to some difficulty concentrating on activities like reading. *Id*. Schmoock testified that she showered once every three days on average and preferred to stay in her pajamas all day. R. 55-56. Despite alleged social difficulties, Schmoock testified that she got along with friends, waiters, cashiers, and other people with whom she interacted. R. 54. That said, she also testified that she did not often see her friends in person, and only spoke with them over the phone a few times each week. R. 56. Schmoock also stated that she had had difficulty with supervisors in the past because she generally took criticism very personally and let the criticism "affect[] [her] whole day." R. 57. Schmoock also said that she has difficulty with regular attendance due to "surgeries, doctor's appointments, flare ups of either [] migraine or depression or anxiety or liver, [] and [she] would just stay in bed because if [she] move[d] then it [was] too painful or something like that." *Id*.

The ALJ also heard testimony from the Vocational Expert (VE). The VE testified that Schmoock's past relevant work could be classified as an appointment clerk and as a customer service representative. R. 59. When asked whether an individual with the same residual functional capacity (RFC) as the one ultimately assigned to Schmoock could perform Schmoock's past work, the VE answered that she would not. R. 60. The VE testified that the

---

[1] The transcript is filed on the docket at ECF No. 10 to ECF No. 10-24.

same individual would still be able to perform a number of jobs available in significant numbers in the national economy, including as a small products assembler, a router, or a classifier. R. 60-61.

## II. ALJ Kafkas's Decision

The ALJ issued a decision on May 28, 2021, denying Schmoock's claim. *See* R. 20-35. In applying the five-step disability evaluation framework,[2] the ALJ found at step one that Schmoock had not engaged in substantial gainful activity from the alleged onset of disability to the date last insured. R. 22. At step two, the ALJ found that Schmoock had the following severe impairments: left ankle and bilateral knee disorders, chronic liver disease, migraine headaches, obesity, attention deficit hyperactivity disorder (ADHD), anxiety and depression. R. 23. The ALJ found that Schmoock's chest pain was non-severe because it did not cause any more than minimal limitations on her ability to perform basic work activities. *Id*.

At step three, the ALJ found that Schmoock's conditions did not, singly or in combination, meet or medically equal the severity of one of the listed impairments. *Id*. As part of this analysis, the ALJ considered Schmoock's mental functioning in the four paragraph B criteria. R. 24-25. The ALJ found that Schmoock had a mild limitation in understanding, remembering, and applying information. R. 24. The ALJ found that Schmoock had moderate limitations in interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing herself. R. 24-25.

The ALJ determined that Schmoock had the residual functional capacity to perform light work with some postural limitations. R. 25-26. The ALJ further limited Schmoock to simple, routine tasks and a low-stress job requiring only occasional decision-making and

---

[2] 20 C.F.R. § 404.1520(a)(4) outlines the process for evaluating a disability claim.

occasional changes in the work setting. Schmoock could also only have occasional brief, superficial interaction with other people. R. 26. In limiting Schmoock in these ways, the ALJ found that while Schmoock's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements as to the intensity and persistence of her symptoms were inconsistent with other evidence in the record. R. 30. Because Schmoock has only challenged the ALJ's findings related to her mental health, I will focus my discussion on that portion of the decision.

The ALJ explained that Schmoock had depressive/bipolar and anxiety disorders with insomnia as well as a history of ADHD. R. 29. He discussed Schmoock's testimony that she experienced depressed mood, increased anxiety, sleeping difficulties, crying spells, anxiety attacks, irritability and difficulty focusing. *Id*. The ALJ noted that Schmoock's care providers had observed on occasion that Schmoock exhibited anxious, blunted, and down and/or tearful mood and affect; her speech was soft, and her psychomotor activity slowed; and she occasionally presented with abnormal thought processes. *Id*. He also mentioned that Schmoock treated her mental conditions with counseling, psychiatric services, and medication. The ALJ explained that limiting Schmoock to simple, routine tasks and only occasional decision-making and occasional, superficial interaction with others sufficiently accommodated Schmoock's mental limitations. He based this finding on largely normal exam findings, conservative treatment history, the opinions of state agency psychologists, and Schmoock's daily activities. R. 31-32.

The ALJ found the opinion from Schmoock's psychiatrist, Mylan Kohler D.O., unpersuasive. R. 33. Kohler had opined that Schmoock "was unable to meet competitive standards across most of the mental aptitudes needed for unskilled work," could not interact

appropriately with others, and was incapable of adhering to basic standards of neatness and cleanliness. *Id.* (quoting Ex. 12F). Kohler had further stated that Schmoock had extreme limitations in the paragraph B criteria and would be absent from work more than four days each month. *Id.* The ALJ determined that such extreme findings were inconsistent with other evidence including normal exam results, Schmoock's ability to interact with others in the context of seeking healthcare and running errands, her appropriate grooming and hygiene when appearing for medical visits, the "absence of highly structured and intensive treatment," and Schmoock's ability to tend to basic daily activities. R. 33. The ALJ also concluded that Dr. Kohler's opinion was not supported by her own findings and treatment notes, which included normal exam results, appropriate grooming and hygiene during their visits, and no "highly structured and intensive treatment." *Id.*

At step four, the ALJ found that Schmoock was unable to perform her past relevant work, but at step five, he found that Schmoock could work in a number of jobs available in significant numbers in the national economy, including as a small products assembler, router, or classifier. R. 34. As such, the ALJ found that Schmoock was not disabled, and denied her claim. R. 35.

The Appeals Council denied Schmoock's request for review on March 18, 2022, *see* R. 8-13, making the ALJ's decision a final decision of the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

On July 7, 2022, Schmoock filed this action seeking judicial review of the decision denying her claim under 42 U.S.C. § 405(g). *See* ECF No. 1. Her case was assigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 6, 8. Schmoock filed a brief in support of her disability

claim, ECF No. 13; Kijakazi filed a brief in support of the ALJ's decision, ECF No. 22; and Schmoock filed a reply brief, ECF No. 25.

## APPLICABLE LEGAL STANDARDS

Under 42 U.S.C. § 405(g), a claimant may seek judicial review of a final administrative decision of the Social Security Commissioner. In such a case, a judge has the power to affirm, reverse, or modify the Commissioner's final decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991). The court can remand a matter to the Commissioner in two ways: it may remand "in conjunction with a judgment affirming, modifying, or reversing the [Commissioner's] decision," or it "may remand in light of additional evidence without making any substantive ruling as to the correctness of the [Commissioner's] decision." *Id.* Here, Schmoock seeks remand in conjunction with a decision reversing the Commissioner's decision.

The court will reverse the Commissioner's final decision only if the denial of disability benefits is "based on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Substantial evidence is not a high bar. It is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). The court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). The court is limited to evaluating whether the ALJ has built an "accurate and logical bridge between the evidence and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). The ALJ's duty to build an

accurate and logical bridge between the evidence and the result is not an overly-exacting task; the ALJ simply "must rest [his] denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

## DISCUSSION

Schmoock alleges that the ALJ made two reversible errors. First, she suggests that the ALJ erred in his consideration of Schmoock's subjective mental health symptoms, particularly her anxiety attacks. Second, Schmoock alleges that the ALJ improperly discredited her treating mental healthcare provider's opinion.

### I. The ALJ's Consideration of Schmoock's Anxiety-Related Symptoms

In relation to a claimant's subjective symptoms, SSR 16-3p directs ALJs to first evaluate whether a claimant's medically determinable impairments could reasonably be expected to cause the reported symptoms, and then directs the ALJ to evaluate the intensity and persistence of the symptoms. In the second portion of this inquiry, ALJs may consider objective medical evidence, the claimant's statements regarding symptoms such as pain, evidence of the claimant's daily activities, factors that precipitate or aggravate symptoms, medication and other treatment, and "any other factors concerning an individual's functional limitations." SSR 16-3p. In particular, objective medical evidence "is a useful indicator . . . in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms, such as pain." 20 CFR § 404.1529(c)(2). That said, an ALJ cannot "reject [a claimant's] statements about the intensity and persistence of [] symptoms . . . *solely* because the available medical evidence does not substantiate [the claimant's] statements." *Id*. (emphasis added).

Schmoock contends that the ALJ erred by discounting her documented history of anxiety attacks that supported her testimony of severe mental limitations. Schmook further alleges that the reasons given by the ALJ for discounting her testimony of severe limitations do not apply to her anxiety attacks specifically. However, the ALJ's decision to address Schmoock's mental health symptoms only briefly does not undermine the substantial evidence on which the ALJ relied in finding Schmoock's limitations less severe than alleged.

First, Schmoock asserts that the ALJ disregarded specific evidence of anxiety attacks, including Schmoock's numerous visits to the Emergency Room for chest pain and her reports of multiple anxiety attacks at work and anxiety attacks that woke her from sleep. ECF No. 13 at 8 (citing R. 332, 1587, 1927, 2452, 3453, 598, 2690). Schmoock asserts that the ALJ was not permitted to "ignore this evidence of a significant symptom." *Id*. But there is no reason to believe that the ALJ *did* ignore this evidence; he simply found that the other evidence in the record suggested that Schmoock's anxiety symptoms, including her anxiety attacks, were not severe as alleged. The ALJ noted that Schmoock experienced "depressed mood, excessive anxiousness, mood swings, problems sleeping, crying spells, decreased concentration, anxiety attacks, and irritability," and demonstrated "anxious, blunted, down and/or tearful" mood, and abnormal thought processes. R. 29. Contrary to Schmoock's allegations, therefore, the ALJ actually credited many of her claimed symptoms. It's true that he credited them in a high-level summary, and he did not detail every alleged incident of mental health symptoms that Schmoock ever documented. But he did not have to do that because "an ALJ need not discuss every piece of evidence in the record," so long as he does "not ignore an entire line of reasoning contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

The fact that the ALJ summarized the evidence and only cited to mental health records generally (*e.g.*, "Ex. 3F", "Ex. 7F," "Ex. 11F") rather than pointing to individual pages of the record documenting anxiety attacks (as Schmoock does in her briefs) does not mean he ignored an entire line of evidence of anxiety attacks—particularly as he *did* find that Schmoock experienced anxiety attacks. *See* R. 29. The ALJ found at step two of the five-step process that Schmoock's anxiety interfered with her ability to get along with others, her ability to interact with supervisors at work, her ability to handle stress, and her ability to manage her emotions. R. 24-25. The ALJ then accommodated these limitations by eliminating or greatly reducing these stressors in the RFC; he limited her to only occasional, superficial interactions with others, including supervisors, and he limited her to a low-stress job with only occasional decision-making and occasional changes. R. 26. Nothing in the ALJ's opinion suggests that he ignored evidence of Schmoock's anxiety just because he only briefly mentioned her anxiety attacks.[3]

Having determined that the ALJ did not simply ignore Schmoock's anxiety-related symptoms, the question becomes whether he provided adequate justification for finding them less severe than alleged.[4] In finding that Schmoock's anxiety-related symptoms were not as

---

[3] Schmoock also argues cases around the circuit demand a finding that a "fail[ure] to specifically tackle [a] claimant's allegations of anxiety attacks *requires* reversal." ECF No. 13 at 11 (emphasis added). This argument fails. First, as already stated, the ALJ addressed all of Schmoock's anxiety-related symptoms, even if only briefly. Second, the only case law Schmoock cites to support this point is from other district courts in the circuit, and those opinions are not binding precedent. Finally, the cases cited do not relate to anxiety attacks, but to *panic* attacks, which are distinct medical events. "Panic attacks and anxiety attacks are not the same. Though these terms are often used interchangeably, only panic attacks are identified in the DSM-5." Carly Vandergreindt, *What's the Difference Between a Panic Attack and an Anxiety Attack?*, Healthline, Feb. 1, 2023, https://www.healthline.com/health/panic-attack-vs-anxiety-attack#home-remedies

[4] Schmoock also argues that the ALJ wrongfully required that the claimant's allegations be fully substantiated by medical records based on his statement, "[t]he medical records fail to substantiate fully the claimant's allegations of disabling symptoms." *See* ECF No. 13 at 12 (quoting R. 30). This kind of "'meaningless boilerplate'" is common in Social Security decisions, and the Seventh Circuit has found the use of such phrases "'innocuous when, as here, the language is followed by an explanation for rejecting the claimant's testimony.'" *Fanta v. Saul*, 848 F. App'x 655, 659 (7th Cir. 2021) (quoting *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013)). The ALJ explained his reasoning for rejecting the Schmoock's testimony, so I will not reverse a soundly reasoned

severe as alleged, the ALJ relied on objective exam findings showing largely normal functioning, medical reports suggesting drug-seeking medical visits, and the opinions of the state agency psychological consultants. First, the ALJ noted that Schmoock generally "exhibit[ed] good mental function across examinations." This included normal behavior, appropriate dress and grooming, logical and goal-directed thoughts, intact cognition, good judgment and insight, normal language, fair to good attention and concentration, good memory and adequate fund of knowledge," R. 21. Schmoock asserts that the ALJ's focus on this objective evidence is impermissible "cherry-picking" of the evidence because "[t]he longitudinal record . . . shows Ms. Schmoock often presented as anxious at both mental health, and physical medicine appointments, consistent with her allegations." But again—the ALJ recognized that Schmoock suffered from anxiety; he recognized that Schmoock's mood and affect "varied" and that she sometimes demonstrated other symptoms of poor mental health. The ALJ simply acknowledged that some objective exam findings, as well as several other factors, suggested that even though Schmoock's anxiety created some limitations in Schmoock's functioning, it did not limit her to the extent alleged.

Moreover, the ALJ also relied on several other factors to determine that Schmoock's symptoms were not as severe as alleged. The ALJ found somewhat persuasive the opinions of two state agency psychologists, both of whom found that Schmoock's anxiety imposed no more than moderate limitations in any of the paragraph B criteria. On a related note, the only opinion that stated that Schmoock's anxiety attacks *would* impose serious limitations on her

---

decision based on the slightest turn of phrase. Additionally, *observing* that a claim is *un*substantiated by medical records differs from *requiring* a claim to be substantiated by medical records.

ability to work was Dr. Kohler, and as discussed in the following section, the ALJ adequately explained why he found Dr. Kohler's opinion unpersuasive.

Finally, the ALJ also relied on notes from various medical providers expressing concern for Schmoock's apparent drug-seeking behavior. The ALJ found that Schmoock's providers' concern for drug-seeking behavior made Schmoock's allegations of chest pain (which she now asserts support her claims of disabling anxiety attacks) less believable. *See* R. 31 ("While the claimant has endorsed severe, debilitating symptoms, the treatment notes are punctuated with provider concerns for drug-seeking behavior."). The Seventh Circuit allows an ALJ to consider drug-seeking behavior in assessing a claimant's credibility regarding the severity of her symptoms. *See e.g.*, *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (finding that the claimant's "drug-seeking behavior" "undermined his credibility" and "could justify a more skeptical view of his testimony.").

However, Schmoock nevertheless argues that the ALJ could not discount evidence of ER visits for anxiety-related chest pain, because the notes referencing "drug-seeking behavior" were from ER visits related to migraines and abdominal pain. ECF No. 13 at 9. But this argument misses the point. Schmoock's drug-seeking behavior is relevant not just because it undermines her credibility related to the migraine or abdominal symptoms, but because it undermines her credibility overall. The ostensible purpose of any particular ER visit does not matter because the *real* issue was that medical providers could no longer trust that Schmoock was not manufacturing or seriously exaggerating her symptoms in an effort to obtain drugs. *See e.g.*, R. 2080, (Provider noted that "[Schmoock] [e]xplained that she refused the bentyl and [] state[d] . . . 'Froedtert gave me oxycodone why won't you'. . . [Provider] [a]lso explained to [Schmoock] that [Schmoock] lied about calling her GI doctor yesterday. . . [Provider] also

discussed with Dr. Sorenson who state[d] to no [sic] give narcotic pain meds. [Schmoock] then walked out prior to discharge. [Schmoock] walked out in no distress."); R. 2078 ("This patient has obtained controlled substance prescription orders from at least 5 prescribers or been dispensed controlled substance prescriptions from at least 5 pharmacies or other dispensers within the past 90 days . . . Concern [Schmoock] may be drug seeking."); R. 2169 ("[P]atient has received a lot of med opiates and benzos recently. . . Patient is demanding narcotics for her chronic pain. Explained that this will not be happening as a but [sic] chronic pain is not treated with narcotics."); R. 1906 ("[Schmoock] has called in the interim multiple times to get narcotic pain medications despite being told each time that hepatology will not be prescribing. My team and I also placed multiple referrals for pain management to which she no-showed, and then would call my office again to obtain narcotic pain medications."). The ALJ would have been derelict had he not considered this information in evaluating her credibility.

For the reasons explained above, I find that (1) the ALJ did not ignore an entire line of evidence of Schmoock's anxiety; (2) the ALJ provided adequate justification for finding that Schmoock's anxiety was not as severe as alleged; and (3) substantial evidence supported the ALJ's findings.

## II. The ALJ's Assessment of Dr. Kohler's Opinion

Schmoock next alleges that the ALJ erred by failing to consider the supportability and consistency of Dr. Kohler's opinion in finding it unpersuasive. She suggests that the ALJ conflated supportability and consistency, and only discussed the opinion's inconsistency with other evidence. I disagree; the ALJ did use the words "supportability" and "consistency" in close proximity to each other, but he still discussed both factors separately.

ALJs must evaluate the persuasive value of medical opinions under standards set by the SSA. *See* 20 C.F.R. § 404.1520c. ALJs must consider various factors influencing the persuasive value of opinions, the most important of which are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Consistency is the degree to which a medical opinion comports with other evidence in the record. C.F.R. § 404.1520c(c)(2). Supportability concerns how much relevant objective medical evidence and supporting explanation a medical source provides. 20 C.F.R. § 404.1520c(c)(1). An ALJ must discuss both factors in evaluating the persuasive value of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). In evaluating any evidence, an ALJ "need only 'minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.'" *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (quoting *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)).

The ALJ stated that Dr. Kohler's "conclusions regarding the claimant's inability to perform unskilled work are not supported by Dr. Kohler's own treatment notes or the other evidence of record." R. 33. The portion of the statement— "not supported by Dr. Kohler's own treatment notes"—goes to supportability. The next portion— "the other evidence of record"—goes to consistency. The following sentence (to the extent it references medical records from Dr. Kohler) also concerns supportability: "As explained, mental status examinations, *including those conducted by Dr. Kohler*, have produced good findings (e.g., fair to good attention and concentration, intact cognition, normal language, adequate fund of knowledge, good insight and judgment, and good memory)." *Id.* (emphasis added). In other words, the ALJ found that Dr. Kohler's largely normal objective findings over the course of Schmoock's treatment did not support her opinion that Schmoock could not work, particularly as Dr. Kohler did not connect the evidence and her opinions.

The ALJ permissibly referred to Dr. Kohler's treatment notes (Ex. 7F, 11F) in considering Kohler's opinion's (Ex. 12F) supportability. The dearth of medical evidence and relevant explanation in the Kohler opinion left the ALJ with little option but to consider the treatment notes. The opinion itself was primarily a checklist in which Dr. Kohler rated on a four- to five-point scale how limited Schmoock was in several areas, without providing evidentiary or explanatory support for each checkbox opinion. The very few explanatory statements from Dr. Kohler include statements like "Anne is unable to tolerate any stress, which will lead to more worry, poor focus, confusion, and difficulty following directions," R. 1933, and "Anne has severe and extreme anxiety. Any minor difficulties with other people leads [sic] to panic, the belief that they hate her, or that she's a failure," R. 1932. But Dr. Kohler did not explain how she arrived at these conclusions, or provide evidentiary support that Schmoock was unable to tolerate any stress or that minor difficulties with others led to panic.

As such, the ALJ turned to Dr. Kohler's treatment notes—the presumable evidentiary basis for the opinions in Exhibit 12F. Dr. Kohler's treatment notes, which the ALJ referenced in finding the opinion unpersuasive, are scarce and unspecific; they mostly repeat Schmoock's symptoms as Schmoock herself reported them. *See, e.g.*, R. 1603, "[Schmoock] has felt as though she's in 'la la land' and sedated. This time of year is difficult for her, especially now that she's alone in her house after her daughter moved out."); R. 1593 ("[Schmoock] has been out of work for a while because of difficulties with her leg and ankle, but will now be going back. She's trying to put off surgery on her ankle out of financial concerns."); R. 1587 ("'I've been having a hard time again.' With being forced to move and separate from her daughter,

she's had multiple panic attacks at work. She was fired, and feels worthless as a result of not having any interaction with her daughter.'").

Because the ALJ could not find evidence or explanation supporting Dr. Kohler's opinion, in either the treatment notes or the itself, the ALJ permissibly found that Dr. Kohler's opinion was not well-supported. This is not to say that Dr. Kohler's opinion was objectively wrong, just that she did not explain her findings thoroughly enough to persuade the ALJ. *See Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) (affirming an ALJ's finding that a medical opinion was not supported, not because the "[the doctor] did not rely on any medical evidence," but because "[the doctor] failed to explain the *link* between the medical evidence she listed and the recommended work restrictions.") (emphasis in original).

The ALJ also adequately addressed the opinion's consistency with the rest of the record. In discounting Dr. Kohler's opinion, the ALJ reiterated that it was inconsistent with evidence like normal objective exam findings, Schmoock's daily activities like shopping, interacting with service workers, and Schmoock's ability to tend to basic daily activities. R. 33. Schmoock claims that the ALJ still failed to adequately support his conclusion that the Kohler opinion was inconsistent with the record, because the opinion was consistent with *some* evidence in the record that showed significant anxiety. Schmoock has effectively asked me to reweigh the evidence. In a 3800-page administrative record, there is certain to be conflicting evidence. What matters is that the ALJ balanced the evidence on either side to arrive at his conclusion, without cherry-picking the record. "This explicit weighing is precisely within the purview of the ALJ—and it is not [the court's] place to reweigh evidence, even where reasonable minds might disagree about the outcome." *Bakke*, 62 F.4th at 1068 (citing *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021)). The ALJ summarized the evidence, including

the evidence indicating significant anxiety-related limitations, and found that the balance of the evidence supported a finding of less restrictive symptoms than Dr. Kohler suggested. It is not my place to reweigh this finding. The ALJ adequately considered the supportability and consistency of Dr. Kohler's opinion, and his decision to discount it is not reversible error.

## CONCLUSION

For all of the reasons explained above, I find that (1) Schmoock has not demonstrated that the ALJ committed reversible error; and (2) substantial evidence supported the ALJ's decision. Thus, I **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 19th day of May, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge